CAL DOUGLAS, Appellant, v. SCANDIA COAL COMPANY, Appellee.

**Mines and Mining:** NEGLIGENCE: FAILURE TO WARN: EVIDENCE. The driver of a mule who knew, from actual use of the animal for some time before he was injured, that he was vicious and would kick, could not complain that his employer was negligent in failing to warn him of the character of the animal in that respect. Evidence held to show that plaintiff, who was a driver in a mine, knew from use and observation that the mule in question was vicious and would kick.

*Appeal from Polk District Court.*—HON. WILLIAM H. McHENRY, Judge.

FRIDAY, JUNE 6, 1913.

ACTION to recover damages. There was a directed verdict for defendant. Plaintiff appeals.—*Affirmed.*

*Guy Savage* and *E. A. Lingenfelter*, for appellant.

*Miller & Wallingford* and *O. H. Miller*, for appellee.

PRESTON, J.—Plaintiff alleges that he was injured by a kick from a mule he was driving in defendant's mine. The only negligence charged is that the mule which was given to plaintiff to drive was a vicious, dangerous, and unsafe animal and known to be such by the defendant when the said mule was given plaintiff to drive. That the plaintiff knew nothing of the dangerous character of such mule nor of his vicious and unreliable temper; that the defendant was negligent in giving plaintiff such an animal to work, and was further negligent in that it did not acquaint the plaintiff with the character and

temper of said mule. There is no allegation that plaintiff complained of the vicious disposition of the mule and that there was any promise to change and reliance thereon. There is some evidence in the record of complaint by plaintiff to one of defendant's employées, who, as plaintiff says, seemed to be assistant pit boss, that he did not like the mule. Plaintiff says: "I didn't like the way he worked, the disposition about him." There was no complaint as to kicking. Plaintiff had been driving mules in this mine from February 16th to May 27th, the date he was injured. For about the first half of this time he drove another mule, and the last half the one in question. He says he did not like the first one, and he and another driver changed mules.

The case seems to have been tried on the theory, as alleged in the petition, that the mule was a vicious one, and that the company did not warn plaintiff of that fact. Having taken that position in the district court, it should be so tried in this court.

It is defendant's contention that plaintiff had actual knowledge of the disposition of the mule to kick, and that when he gained this knowledge there was no longer a duty on the part of defendant to warn. That such duty was superseded by plaintiff's own knowledge, and that there was no negligence in failing to tell plaintiff what he already knew. Defendant also says that plaintiff's abuse of the mule caused it to be vicious.

If defendant had furnished a vicious mule without acquainting plaintiff with that fact, and plaintiff, without knowledge thereof, had been kicked by the mule, a different proposition would be presented. The undisputed evidence is that for at least five or six weeks before plaintiff was injured he knew, from his own observation, that this mule was vicious and would kick, and had often kicked at him. We quote some of the testimony of plaintiff bearing on this subject. He says:

I have been a mule driver for ten years. The first mule they gave me was named Mike, the last one Pat. Pat was something like a broncho; he was small; he would balk; the first thing every morning he was hard to start; if you went to beating him he would start kicking and everything like that; you couldn't do anything with him, but after you got him warmed up he worked all right. No one told me about Pat before I began driving him. I first learned of his disposition about a week after I commenced driving him. I did not whip him the first, second, or third days I drove him; he did not kick those days. He kicked at me in about a week after I commenced driving him several times, and after that he kicked at me about every day if he got stuck, and some time during the day he would get stuck. Q. So he would kick at you every day, but you would get out of his way; is that right? A. Get out of the way. Q. But from the end of the first week after you went there and drove Pat he got to kicking at you every day. That is right, is it not? A. Yes. There were days he didn't kick at me. Q. And Pat commenced to kick within a week after you got him? A. Yes. Q. And he kicked at you? A. Why, certainly he kicked at me. Q. And he kept that right up until he finally hit you? A. Yes, he got me all right. Q. Now, after Pat got to kicking at you he would go right at you, would he not? A. Sure he would. Q. How do you explain that he never kicked you before this time? A. I stayed out of his way, I guess. Q. And that was the only reason you didn't get kicked before this day? A. That was the only reason. Q. Did he act like he meant it? A. You bet you. He kicked to hurt. He wasn't playing whenever he kicked. Q. You were not in the habit of getting very close to his heels after you had driven him a while? A. I wouldn't give him any chance to kick me. Q. That was because you knew how vicious he was? A. Yes, sir. You couldn't trust him. I never did trust him. I watched him all the time. I trusted him up until I found out what he was. After that I didn't trust him. It didn't take very long to find that out. Q. You knew for three or four or five or six weeks before he hurt you if you did not keep away from his heels he would hurt you? A. Yes, I knew that. Q. And during that four or five or six weeks you tried to keep away from his heels? A. I tried to keep him from kicking me. He usually did his kicking when I had the car loaded. Q. Or when you got stuck and whenever

he saw you in a close place he would sometimes kick? A. He wouldn't wait until he got me in a close place all the time to kick. He would kick any time he felt like it. In urging him to pull I would double up my whip and hit him across the back with it, or something like that, where I didn't have room to cut him with the end of it. The whip was a four plat, round, made of rawhide leather. I would double that so as to have two strands of it and hit him across the back with it. Q. You would get off on one side to do this so he couldn't kick you? A. Would be right at his side. I have thrown chunks of coal at him from behind him and behind the car, too. He did not like that. I could tell by the way he acted he did not like it. Q. Would he kick if you would do that? A. Yes. Mike was a mule he didn't need no abuse. Pat needed it, but you couldn't give it to him; that was all. Q. Because he would retaliate? A. You couldn't abuse him. I did not carry a whip when driving Mike. I got one after I commenced driving Pat.

At the close of plaintiff's evidence, the defendant moved for a directed verdict on the ground that plaintiff had failed to establish any ground of negligence upon which a recovery can be based; that the evidence shows that for a number of weeks prior to the accident the plaintiff knew of the alleged dangerous and vicious disposition of the mule, and that said mule would kick him if given a chance, and, this being true, negligence cannot be predicated upon the claim that the coal company knew of the character of the mule and failed to acquaint the plaintiff with it at the time plaintiff was given the mule to drive; that the evidence shows that plaintiff knew as much or more about the mule's disposition than the company itself. This motion was sustained, and we think properly so. Plaintiff was an experienced driver.

If we concede that it was the duty of the defendant to warn plaintiff of the vicious disposition of the mule, the only purpose in this would be to enable plaintiff to be on his guard and protect himself. As we have shown, the undisputed evidence is that for several weeks prior to plaintiff's injury he knew all that the defendant could have told him, and he fully appreciated the danger. We are unable to see what difference

it could make whether he obtained this knowledge from the defendant, or from the mule. All that plaintiff was entitled to was the knowledge. When he received it, no matter from what source, he could no longer complain.

In the case of *Sidwell v. Economy Coal Co.*, 154 Iowa, 475, this court said: "Conceding that the evidence was such that the jury might have found the decedent inexperienced in the work he was about to undertake, and that the defendant's superintendent was aware of this and omitted to warn or instruct him concerning the dangers thereof, as the jury might have found, yet it conclusively appears from the record that, notwithstanding this, he became as fully aware of the dangers incident to his employment, and how to avoid them, before the fatal accident as he could have from anything the superintendent might have said to him; and therefore, though the defendant may have been derelict in not directing his attention to the peculiar dangers involved in undertaking to clean out the air course, this could not have been the proximate cause of his injury. Of course, there is no negligence in not instructing a person as to that which he already knows, and if, before suffering because of ignorance, he ascertain all the information which should have been imparted to him, he is thereafter charged with knowledge thereof, and cannot complain because of conditions he has become aware of, or of not being instructed concerning dangers of which he had become as fully informed as his employer. This seems too evident to require the citation of authority, but see *Oleson v. Coal Co.*, 115 Iowa, 74, 87 N. W. 736; *Williams v. Coal Co.*, 146 Iowa, 489, 125 N. W. 232." See, also, *Bessemer Land Co. v. Dubose*, 125 Ala. 442, 28 South. 380; 26 Cyc. 1170; 3 Labatt's Master & Servant, section 1143 (2d Ed.).—*Affirmed.*