## T. L. WILLIAMS v. CRAIG & DAWSON COAL COMPANY, Appellant.

**Mines and mining:** NEGLIGENCE: ASSUMPTION OF RISK: EVIDENCE.
1 Ordinarily one engaged in completing an entry to a mine assumes the risk of dangers which develop as the work progresses; but where it appeared that the pit boss was authorized to and did direct the plaintiff how to perform the work, and the evidence showed he was ordered to "brush" the roof without timbering the same until the brushing was completed, and that in doing so he did omit to timber as directed (though this was in dispute) until the brushing was completed, and that the omission to timber as the work progressed might have been the proximate cause of the fall of slate which injured plaintiff, the question of defendant's negligence was for the jury.

**Same:** CONTRIBUTORY NEGLIGENCE. Where a pit boss authorized to direct
2 plaintiff in his work ordered him to "brush" the roof of a mine entry without propping the same until the work of brushing was completed, he had the right to assume that the work might be safely done in the manner directed by his superior, unless obviously dangerous, or as an ordinarily prudent man he must have known better; and it was a question for the jury to say whether acting as an ordinarily cautious person he ought to have proceeded with the work as directed.

Same. Where plaintiff, an experienced miner, was directed by his su-
3  perior to ''brush'' a mine entry without timbering the same until
the brushing was completed, the foreman, in directing the work,
was not bound to enter into details, but had the right to assume
that plaintiff would observe the customary precautions for his own
safety, such as testing the roof for loose slate.

Same: BURDEN OF PROOF. The burden of proving freedom from con-
4  tributory negligence was upon the plaintiff, and by not showing that
he took the customary precaution for testing the roof of the entry
for loose slate, which fell, causing his injury, he failed to negative
his own negligence as a contributing cause of his injury.

*Appeal from Webster District Court.*—HON. CHAS. E.
ALBROOK, Judge.

SATURDAY, APRIL 11, 1914.

ACTION for damages resulted in judgment against it,
from which it appeals.—*Reversed.*

*Parker, Parrish & Miller* and *C. Woodbridge,* for appel-
lant.

*Kenyon, Kelleher & O'Connor,* for appellee.

LADD, C. J.—The defendant operated a coal mine by the
room and pillar system. The plaintiff had been employed in
it six or seven years, and had been a miner much longer. The
particular entry extended several hundred feet from the bot-
tom of the shaft, and Arch and Joseph Hays were driving
it further to the east. The track had been laid to within
about twenty feet of the face of the coal, the end of the
entry as then driven. There was a cross-cut about thirty or
thirty-five feet back where plaintiff had worked with the
mine foreman a couple of hours the night previous, putting
in timber. In the morning following, September 30, 1911,
this foreman, who was a vice principal, as he came from
the face of the coal, informed plaintiff that the entry where
the Hays boys were working needed brushing, and directed

him to "go ahead and brush that place six or eight inches thick, and timber it afterwards; after you get it all brushed down, timber it afterwards; do not stop the Hays boys from loading coal." The entry was six feet wide, and the vein of coal about three and one-half feet thick, so that it was necessary to brush the roof as stated in order to get the cars in and load them. The plaintiff did as directed, and, after brushing the roof, which was "rolly," that uneven, back fifteen or sixteen feet, setting big chunks to one side, so that he would have the dirt on the tracks when the driver came with the car to haul it away, went back to put timbers. across the entry. In doing so, his light went out, and, as he went toward the Hays boys to relight, slate fell upon him from the roof, and he was seriously injured.

Counsel first contend that there was no sufficient showing that defendant was negligent. Though the order did not mention how far the brushing was to be done, this was to be inferred from what was said, and the plain-

1. MINES AND MINING: negligence: assumption of risk: evidence.

tiff might well have understood that it was to extend as near the face of the coal where the Hays boys were working as the car on which to load the coal could well be brought, and this was fifteen or sixteen feet. The roof was variable, props being set here and there in the entry according to its condition, three or four feet apart at some places, and at others fifteen or twenty feet apart. Some of the evidence tended to show that plaintiff had not completed the brushing, but the jury might have found that he had, and also that he was caught by slate falling from the portion of the entry he had brushed. The evidence also warranted the conclusion that the usual and safe method of doing such work where the roof was like. that in question was to brush three or four feet and then prop the roof with timber, and that, in view of the condition of the · roof, defendant, in requiring, through its pit boss, who was vice principal, that plaintiff brush the roof entry some fifteen or sixteen feet and timber afterwards,

was negligent in prescribing the manner of doing the work, or, as put by the trial court, in exacting a method of doing the work which rendered the place unsafe. ·

Ordinarily, a day man, in making or completing an entry, takes the risk of the dangers which develop as the work progresses for he makes his own working place. *Wahlquist v. Maple Grove Coal & Mining Co.*, 116 Iowa, 720; *Oleson v. Coal Co.*, 115 Iowa, 74; *Lammey v. Coal Co.*, 144 Iowa, 640.

But the evidence not only disclosed that the pit boss was authorized to direct plaintiff how to perform the work, but that the latter, in doing it, did omit timbering as directed until (though this was in dispute) the brushing had been completed, and that the omission to timber as the work progressed might have been found a proximate cause of the injury. There was enough to carry the issue as to defendant's negligence to the jury.

Counsel for appellant also contend that plaintiff contributed to his injury by his own negligence: (1) In proceeding with the work without propping; and (2) in brushing the entire sixteen feet and passing under the roof so brushed without testing it in the usual way. Of course, he had the right to assume that the work might be done safely in the manner directed by his superior, unless obviously dangerous, or, as an ordinarily prudent man, he must have known better, and it was for the jury to say whether, acting as an ordinarily cautious person would have in like situation, he ought to have proceeded with the work as directed. *Braddick v. Coal Co.*, 138 Iowa, 406; *Hardy v. Ry.*, 149 Iowa, 41.

2. SAME: contributory negligence.

Should he, in the exercise of ordinary care, have tested the roof as the work of brushing proceeded? This is done by striking the slate above with pick or sledge, and, if it sounds hollow, this indicates that it is loose and likely to fall. If the partially detached piece is thick, the sound may not indicate its condition. The

3. SAME.

evidence does not indicate that plaintiff did this. ·When asked whether he sounded the roof as he went for a light, he answered:

No, sir.  Q. That is your business, isn't it, to sound the roof to see whether it was loose or not?  A. No, sir; I don't think so.  Q. You don't think it is?  A. No, sir.  Q. If you were working in an entry that way, isn't it your place to see whether the slate is safe or not?  A. I would if I went to do that alone.  Q. Well, you was doing it alone?  A. The boss told me to brush that down, and I thought it was all right. Q. He didn't tell you not to sound the rock or the roof?  A. No, sir.  Q. And you didn't test the rock above where you had taken the slate down to see whether it was safe or not? A. No, sir; not where I was in there.  Q. Did you test it when you took the slate down?  A. I expect I did.   I took the chunks down, and I might have tested it but I don't remember now.  Q. You probably would, wouldn't you?  A. Probably.  Q. If you took down six or eight inches of the roof, and there was some that was loose up there and liable to fall, you would be apt to take that down too, wouldn't you?  A. Yes, sir; if it was loose.  Q. If it sounded like a drum?  A. I didn't pay any attention to it.  Q. It is your business, wasn't it?  A. I don't know. . . . I can tell when slate is dangerous by sounding it, tapping it with sledge or pick. . . . This slate that fell was slate that I had already been under and had taken slate off below it. . . . I don't remember now whether I sounded this slate above the brushing while I was doing the brushing. . . . I had already been through under that once when I brushed it, and I came back through again when I went back to the timber, and then my light went out, and I went through under there the third time when the slate fell.  Q. None of these times did you test the roof to see whether it was dangerous or not?  A. I don't know whether I did or not.  Q. You don't remember that?  A. No, sir.  Q. As a matter of fact, you didn't think about that slate dropping, did you; you went in there without thinking about it? A. I didn't think it would fall on me.  I suppose if I sounded it I could have told.  Q. You don't know whether you sounded it or not?  A. I don't remember of sounding it.  In brushing that roof down that morning, I did not discover anything that seemed to me to be loose or likely to drop, and

when I walked back there I did not know or suspect or think that there was any of the roof loose and likely to fall. I had discovered no evidence of it in the work that I had done there in brushing.

There was no affirmative showing, then, that in removing the slate six or eight inches in thickness from the top he sounded or tested the roof, though he might have ascertained its condition had he done so. It was fully established that but for his instructions it would have been plaintiff's duty to test the roof as the work progressed in order to ascertain whether it was likely to fall. A miner named Berry was asked: "You would keep watch of the roof a little while you were brushing wouldn't you, while you were brushing and timbering? A. Yes, sir; I expect that I would have to do that at all times. Q. That is part of the miner's business while he is working in the entryway, to look out for, to keep watch of the roof, to keep watching the roof. A. If I was in the entry; yes, sir. (Question repeated to witness.) A. At work in the face; yes, sir."

Davenport, an experienced miner, was asked: "What is the custom, what is the duty, of the day man as to keeping up a continual inspection or examination of the roof, where he is working to see whether it is safe or not? A. the custom is to sound the roof." The witness further testified that it was also the custom, when the entryman found the roof not safe or loose, to warn those who might have occasion to pass through the entry at that point.

Crain, the superintendent of the mine, testified that plaintiff was employed as a day man, whose duties were brushing and timbering and putting down track, and any work required of him, and that it was "customary for all day men to examine the roof, and test it as they progressed with their work. When they entered or started to work, it is customary first to examine and see what is necessary to be done, and to see that it is safe to work under, and it is also customary to continually test the roof while they are

working with it." He further testified that, if the order was given, "it would carry with it that a man must look after his own safety and the safety of others in the mine in the performance of his work." There was other testimony of similar import which was not contradicted, so that, unless the plaintiff was relieved from testing the roof in the usual manner as the work of brushing progressed by the order given him to brush first and timber afterwards, the failure to discover the loose slate must be attributed to his own neglect in not sounding the roof, rather than to any fault on the part of the defendant. He admitted that, had he tapped the roof with his pick or sledge, he would likely have discovered that the slate was loose, and this is confirmed by the testimony of other witnesses. The piece of slate which fell was about as wide as the entry and twelve to sixteen inches thick on one side and about six inches on the other and from twelve to fifteen feet in length. Had he tapped the thin part, there seems no doubt but that the condition of the roof would have been ascertained and the accident avoided.

That the roof may have been solid when he began gave him no assurance that it would so continue when, with pick or wedge, he removed six or eight inches thereof. As he must have known, this might have had the effect of loosening that above, or removing the portion supporting it, and, as the roof was uneven and likely to crumble, he was not excusable in not testing it as he advanced in working. He might have found it in such condition that, by removing the loose portions, he could safely continue the work of brushing until all was done, or, on the other hand, it might have developed that it would have been unsafe proceeding farther without first timbering or propping it. Although instructed as to the manner of proceeding, he had no right blindly to pursue his labors, but was bound, especially in the view of the character of the work he was performing, to keep a lookout for his own safety, and take the customary precaution

of testing the roof to ascertain its condition before exposing himself to the peril of having it fall upon him.

All the order purported to dispense with was the timbering, and then only until the brushing had been completed, and it was not to be inferred therefrom that other customary precautions for safety were to be dispensed with.   The plaintiff was an experienced miner, having served as day man in this particular mine for years, and, in directing him to do the work, the foreman was not bound to enter into details, but had the right to assume that he would observe the customary precautions for his own safety in the performance thereof in the manner directed.

The burden of proof was on the plaintiff affirmatively to establish his freedom from contributory negligence, and, in so doing, to show that, as the injury would have been obviated had he tested the roof and such was the duty of one brushing it, he inspected or

4. SAME: burden of proof.

tested the same as the work progressed, and failed to detect the loose slate which fell on him.   Owing to the omission of proof of such inspection as was essential to his safety, the plaintiff did not negative his own negligence as to contributing cause, and, for this reason, the issue ought not to have gone to the jury.—*Reversed.*

WEAVER, EVANS, and PRESTON, JJ., concur.