JAMES SPROLL, Appellant, v. BURKETT MOTOR COMPANY et al., Appellees.

No. 43192.

Junᴇ 15, 1937.

George J. Dugan and Lee, Steinberg & Walsh, for appellant.

Stipp, Perry, Bannister & Starzinger, and R. K. Craft, for appellees.

Doɴᴇɢᴀɴ, J.—The plaintiff, James Sproll, at the times here involved, was a pipe line welder, employed upon a pipe line near Perry, Iowa. A. L. Montgomery, also a pipe line welder, was a friend of Sproll, was employed on the same pipe line, and resided with his wife at Perry, Iowa. The defendant, Burkett Motor Company, is a corporation engaged in the sale of automobiles and the operation of a garage at Perry, Iowa. On November 2, 1933, Montgomery went to the place of business of the defendant for the purpose of negotiating for the purchase of a used automobile. He was the owner of a used car which he expected to turn over to the motor company as part payment on the automobile purchased by him in case a satisfactory deal could be made. Montgomery was accompanied by Sproll

and he was told that he might take a used Ford which the motor company had repossessed and try it out. Sproll was experienced in the operation of automobiles and Montgomery asked him to go along to observe the mechanical operation of the car and act in an advisory capacity to Montgomery in his prospective purchase. Montgomery drove the car five or six miles into the country and then came back to the garage of the defendant. On returning to the garage he told Mr. Duncan, a representative of the motor company, that the car drove all right and, after some negotiations in regard to the price and terms of purchase and the allowance which would be made for his old car, he told Duncan that, before making any deal, he would like to get his wife and take her out in the car and see what she thought of it, and Duncan told him to go ahead and show it to her. Montgomery and Sproll then got into the car and Montgomery drove to his residence, where they picked up his wife, and then proceeded eastward into the country on a paved road. When they had reached a point about two miles east of Perry, the car left the right side of the pavement, traveled diagonally across the road and off of the left-hand side of the pavement, passed over the shoulder of the road, across a ditch, up to a fence around a stock corral where it broke off a heavy oak post, proceeded eastward along a woven wire fence where it broke off three more posts and broke through the woven wire, and finally struck the corner of a seven-room house owned by a farmer and moved it about nine inches out of place on its foundation. From the point where the car left the pavement to where it struck the house was about 300 feet, and as a result of the impact of the automobile against the house Montgomery's wife was killed and Sproll was severely injured.

This action was brought by Sproll for damages against the defendant motor company. In his amended and substituted petition filed during the trial of the case he alleged that, while the car was under the exclusive control of the driver, it suddenly left the highway, went through two fences and struck the house, and that, as a result, he received serious personal injuries; that the defendant motor company requested Montgomery to take the car for the purpose of trying it out and ascertaining whether or not it was such as he desired to purchase; and requested the plaintiff to accompany Montgomery for the purpose of advising him as to the car's quality and efficiency. For answer, the de-

fendant denied the allegations of the plaintiff's petition generally, and, in a second count, stated that the Ford automobile described in the petition was the property of the defendant; that it was a used car and was shown and offered to Montgomery in exchange for a used car belonging to him; and that the negligence of the plaintiff contributed to the accident causing his injuries. At the close of the evidence the defendant filed a motion asking the court to direct a verdict in its favor. This motion was sustained, a verdict was directed in favor of the defendant, and judgment of dismissal, at plaintiff's costs, was entered thereon. From this order of the court the plaintiff appeals.

As will appear from the pleadings, the plaintiff bases his cause of action on a general allegation of negligence under the doctrine of *res ipsa loquitur*, and, as grounds for reversal, he alleges that the court erred in sustaining defendant's motion and directing a verdict in defendant's favor: 1. Because the plaintiff was not a guest or gratuitous passenger, but was a passenger for hire. 2. Because the automobile was under the exclusive control of the defendant motor company and Montgomery, who was driving it with the defendant's knowledge and consent, whose possession and acts were those of the defendant, and for whose negligence the defendant was responsible. 3. Because the car was under the exclusive control of the defendant and Montgomery, its chosen driver, and because the injuries resulted in an unusual manner and from the car being out of place, the doctrine of *res ipsa loquitur* applies, and the burden was upon the defendant to exonerate the driver and itself from negligence.

■■■ It is claimed that the plaintiff was not a guest or gratuitous passenger but was a passenger for hire, because he accompanied Montgomery to Montgomery's benefit, for the purpose of performing a service by observing the operation of the car and advising Montgomery as to its quality and efficiency, and not merely for the purpose of taking the ride as a guest or gratuitous passenger. Appellant contends that, under the provisions of section 5026-b1, Code of 1935, as construed by this court in Bookhart v. Greenlease-Lied Motor Company, 215 Iowa 8, 244 N. W. 721, 724, 82 A. L. R. 1359, and Knutson v. Lurie, 217 Iowa 192, 251 N. W. 147, the fact that Sproll was accompanying Montgomery in the car for the purpose of per-

forming a service, takes him out of the category of a guest or gratuitous passenger. Section 5026-b1, commonly known as the "guest statute," provides that the owner or operator of a motor vehicle shall not be liable for damages to a passenger or person riding in such motor vehicle as a guest or by invitation and not for hire, unless the driver of the motor vehicle is under the influence of intoxicating liquor or is guilty of recklessness in its operation. No claim is made that the driver, Montgomery, was under the influence of intoxicating liquor or that he was guilty of recklessness in the operation of the automobile. The claim here made is,—that Montgomery, having been authorized to drive the car for the purpose of demonstrating it to his wife, was operating it with the knowledge and consent of its owner, the motor company; that, under section 5026, the owner, as well as the driver, is liable for damage caused by the negligence of the driver who is operating a car with the consent of the owner, unless such damage is to a person riding in such automobile as a guest or by invitation and not for hire, as provided in section 5026-b1; that Sproll was not riding in the automobile as a guest or by invitation and not for hire, but was a passenger for hire, because he was riding in the automobile for the purpose of performing a service and at the request of the person authorized to operate the automobile; and that Sproll is, therefore, entitled to recover from the owner of the automobile for the damage he has sustained because of the negligence of Montgomery in operating the automobile with the knowledge and consent of the defendant motor company. The crucial questions here presented are,—Was the appellant, Sproll, a passenger for hire? If so, was the service which he was to perform such as made him a passenger for hire as to the motor company and made the motor company liable to him because of the negligence of Montgomery?

In Bookhart v. Greenlease-Lied Motor Co., supra, the plaintiff, Bookhart, was a prospective purchaser of a car which was being demonstrated to him by a representative of the defendant motor company. In the course of this demonstration Bookhart was injured and sued the motor company. The motor company denied liability on the ground that Bookhart was a guest or passenger by invitation and not for hire. Bookhart claimed that his relation to the motor company was not that of a gratuitous guest. After quoting extensively from the case of Crawford v. Foster, 110 Cal. App. 81, 293 Pac. 841, which construed the

provisions of a California statute somewhat similar to those here under consideration, Mr. Justice Wagner said:

"A prospective buyer of an automobile, who at the invitation of the salesman accepts a ride therein as a part of the examination thereof, for the sole purpose of ascertaining whether it complies with his requirements, is not riding therein as a matter of hospitality,—as a mere gratuity,—but is rendering value received for his transportation."

In Knutson v. Lurie, supra, the plaintiff was employed to do domestic work in the home of the defendant, and was riding in a car driven by the wife of the owner. Mrs. Lurie, accompanied by two of her children and the plaintiff, was on the way to a shoe repair shop for the purpose of obtaining a pair of shoes belonging to the plaintiff when the accident occurred. It also appeared, however, that part of plaintiff's duties was to take care of Mrs. Lurie's two children, and we held that, if her presence in the car was for the purpose of performing this duty, she was not a mere guest by invitation and not for hire. In both of these cases it will be noted that the passenger was not in the automobile for the purpose of accepting a mere gratuity on the part of the owner or driver. In the Bookhart case, the prospective purchaser of the automobile was in the automobile for the purpose of assisting the motor company or, at least, furnishing it the opportunity to make a sale. In the Knutson case, the servant girl was in the automobile for the purpose of performing a service connected with her employment.

We think the instant case must be distinguished from both of the cited cases. Although the petition in this case alleges that the plaintiff was requested by the defendant motor company to accompany Montgomery for the purpose of advising him as to the quality and efficiency of the car, the evidence does not sustain this allegation. We think the evidence clearly shows that the defendant motor company was dealing only with Montgomery and, while it may be inferred from the evidence that the defendant motor company knew that the plaintiff was going to accompany Montgomery, it did not request him to do so, and any service which he might or did perform was for the benefit of Montgomery as a prospective purchaser and not for the benefit of the motor company. The evidence shows that, following Montgomery's first conversation with defendant's represen-

tative about this car, Montgomery took the car and drove it five or six miles out from town and back.to the defendant's place of business, and that plaintiff went with him on this trip, because he considered plaintiff to be a good judge of automobiles and wanted the benefit of his experience and advice. After Montgomery and plaintiff had returned from this trip, Montgomery told defendant's representative that the car drove all right and did not say anything in the way of finding any fault with it. Thereupon Montgomery began to negotiate with defendant's representative, and was told the value that would be allowed on his car, the price of the Ford, and the terms for paying the balance. The evidence does not show that Montgomery made any objection to any of the terms, but he expressed a desire to have his wife see the car before making the deal, and he was authorized to take it and show it to her. Nothing was said at that time about the plaintiff accompanying Montgomery and his wife for the purpose of making further observations in regard to the working of the car.

We think all of the evidence indicates that whatever service the plaintiff was performing was at the request of and for the benefit of Montgomery. In fact, being an experienced automobile man, it is quite probable that the services performed by him might result in criticisms which would require the motor company to concede more to Montgomery in making a bargain with him, than if the car had been sold without the plaintiff giving Montgomery the benefit of his knowledge and observations. As far as the plaintiff is concerned, the defendant motor company neither requested any service to be performed by him, nor could it reasonably expect to be the beneficiary of anything done by him. Even if it be conceded that, under the doctrine of the Bookhart case, Montgomery was acting as the agent of the motor company in demonstrating the car to his wife, a matter which we do not here consider or determine, we do not think it follows that he was acting for the motor company or doing anything for its benefit when he took the plaintiff along with him, so that he might have the benefit of plaintiff's opinion and advice as to the merits or demerits of the car. While Montgomery's wife may have had no pecuniary interest in the proposed purchase of this automobile, she undoubtedly did have an interest in its use and, so far as the defendant company was concerned, it might be argued that she was in the position of a prospective

purchaser to whom the motor company had authorized Montgomery, as its agent, to demonstrate the car. The plaintiff, on the other hand, had no interest in the car, and, so far as the evidence shows, would have acquired no interest in it if the sale had been made to Montgomery. His presence in the car was not that of a prospective purchaser who, by permitting the agent of the car to demonstrate it to him, was thus conferring a benefit upon the motor company. His services, if any, were to Montgomery only in Montgomery's capacity as a prospective purchaser.

■■■ A considerable portion of the briefs and arguments is devoted to a discussion of the doctrine of *res ipsa loquitur*. The appellant contends that this doctrine is applicable to the facts of this case and that, the plaintiff having shown that the car was being driven by Montgomery with defendant's knowledge and consent, the unusual course pursued by the car, in leaving the highway and traveling across the ditch and through the fence to the place where it struck the house and thus caused the injuries to the plaintiff, made a prima facie case of negligence against the defendant, and that the burden was then on the defendant to show by evidence that the unusual action of the car was not the result of negligence on its part. Appellees contend that, under the facts shown by the evidence in this case, the doctrine of *res ipsa loquitur* had no application whatever. Before this doctrine can apply, it must appear that the instrumentality causing the damage must have been under the exclusive control of the defendant. Leaving out of consideration the question as to whether the automobile was under the exclusive control of the defendant motor company, through its agent Montgomery (a matter which we do not determine), we do not think the evidence in this case is such that the defendant can be held liable under the doctrine of *res ipsa loquitur*.

Under the evidence in this case, the unusual course taken by the automobile was caused, either by the negligent manner in which it was operated by Montgomery, or by a defect in the automobile itself. If the unusual course of the automobile was caused by the negligence of Montgomery in its operation, the plaintiff could not recover against the defendant because, as we have already found, he was not a passenger for hire but was, as far as the defendant is concerned, a gratuitous guest. Unless the evidence was such that the jury could find therefrom that

the unusual course followed by the automobile was caused by a defect in the automobile, and not by the negligence of Montgomery, they could not be allowed to guess as to which was the cause. In the case of Klein v. Beeten et al., 169 Wis. 385, 172 N. W. 736, 738, 5 A. L. R. 1237, in which the facts were somewhat similar to the facts in the instant case, in affirming a judgment in favor of the defendant, the supreme court of Wisconsin said:

"Verdicts cannot rest upon guess or conjecture. It is the duty of the plaintiff to prove negligence affirmatively; and, while the inferences allowed by the rule or doctrine of res ipsa loquitur constitute such proof, it is only where the circumstances leave no room for a different presumption that the maxim applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails, and it cannot be invoked. · Quass v. Milwaukee Gas Light Co., 168 Wis. 575, 170 N. W. 942."

■■■ It appears from the record that the original petition filed in this case alleged specific grounds of negligence, instead of relying upon the doctrine of *res ipsa loquitur,* and that the amended and substituted petition, on which plaintiff elected to rely, contained only a general allegation of negligence under the doctrine of *res ipsa loquitur,* and was not filed until after all the evidence had been introduced. There is much evidence in the record as to the inspection of the car and the work done on it by the defendant before it was turned over to Montgomery. We think the record clearly shows, not only in the evidence introduced by the defendant, but even in the evidence introduced by the plaintiff, that the defendant did use ordinary care to ascertain that the car was in good condition before entrusting it to Montgomery. Moreover, we think the evidence introduced by the plaintiff affirmatively shows how the accident happened and excludes any defect in the car, unless it be a defect in the door lock. This evidence of the plaintiff clearly indicates that, while the driver was proceeding along the road, he noticed that the door was not completely closed, and that, in an attempt to close it more tightly, the wind caught the door, which opened from the front, almost pulled the driver out of the car, and caused the car to leave the road. We think the evidence failed to show any such defect in the door lock as would warrant a jury in

finding that it was the cause of the car leaving its course. In any event, we think the evidence leaves a situation where, if the door was not tightly closed, it is just as probable that this condition was caused by a failure of the driver of the car to close it tightly, as it was by any defect in the lock.

We find no error in the order of the trial court directing the jury to return a verdict in favor of the defendant motor company, and such order is hereby affirmed.—Affirmed.

RICHARDS, C. J., and ANDERSON, MITCHELL, PARSONS, STIGER, SAGER, and HAMILTON, JJ., concur.