TINA WITTROCK, Appellee, v. GEORGE W. NEWCOM et al.,
Appellants.

No. 44050.

JANUARY 18, 1938.

William P. Welch and Andrew Bell, for appellee.

Floyd E. Page, for appellants.

ANDERSON, J.—The plaintiff, appellee, Tina Wittrock, was an old lady sixty-eight years old and the sister of one of the defendants, August Hansen, by whom she was employed as a housekeeper on his farm in Crawford County, Iowa. The defendant, George W. Newcom, was an automobile dealer in Denison, Iowa, selling Plymouth automobiles, and the defendant,

Raymond Atzen, was in the employ of Newcom as an automobile salesman. The record shows that Atzen had the authority to permit prospective customers to drive the cars demonstrated by Atzen. The defendant, August Hansen, on the date of the accident was past eighty-one years of age, a widower, and a farmer living some six miles northwest of Denison. His sister, the plaintiff, was employed as his housekeeper and had been permitted by him to spend a part of the week preceding August 11, 1934, visiting one of her daughters in the city of Denison and had arranged with her to pick her up in the city of Denison on August 11, 1934, and return her to his farm home. Hansen owned a Dodge coupe which he had purchased in 1926, and which he owned on the day of the accident. On the day of the accident Hansen was about to leave his home in his Dodge coupe for the purpose of returning his sister to his home as per prior arrangement. Atzen, the salesman, appeared about this time with a Plymouth demonstrator and induced Hansen to ride with him to Denison where they would pick up Mrs. Wittrock, the plaintiff, and return with her to Hansen's home. When they arrived in Denison Mrs. Wittrock was requested by both Hansen and Atzen to get into the rear seat of the car being demonstrated by Atzen which was a Plymouth coach. It was necessary for one of the occupants of the front seat of the car to get out so that Mrs. Wittrock could get into the back seat. As she got into the car Atzen mentioned to her that he was trying to sell the car to her brother and maybe she could assist him. Atzen then drove the car west from Denison about four miles, when he stopped the car on a graveled road, left the motor running, walked around the car to the opposite side, and told Hansen to move over under the steering wheel. Hansen protested that he did not know whether he could drive the car or not and Atzen told him that he could; that it drove just like a Ford which had previously been demonstrated to him. When Hansen got over under the wheel, Mrs. Wittrock remonstrated, saying that her brother was too old to drive a new car that he was not used to and that he ought not to be permitted to do so. Atzen assured her that he would watch Hansen and see that he would get along all right; that he could drive the car. He said, in answer to Mrs. Wittrock's protests: ''All right, I am going to watch him. I am going to help him with the driving and then he can't get into trouble. We will get along all O. K.'' And Atzen further

testified that when he gave these assurances to plaintiff it was his intention to assure her that everything would be all right. He further said:

"I wanted Hansen to drive the automobile so that it would create a desire in him to buy it. I visited with Mrs. Wittrock when we were driving. I meant her to think that I would watch to see that it would be safe to the best of my ability. I thought she would feel that way,—that is why I used the words I did in making the reply to her protests."

Mrs. Wittrock testified that she knew her brother did not know anything about the new car and that she was afraid that he would not be able to operate it and that an accident might occur. But "When my brother took the car and Atzen told me he would watch and see that things were all right, I thought he would watch. I could not get out of the car because they were in the front seat."

Atzen further testified:

"A short time before I brought the car to a stop she said, 'He's too old to drive this car.' I did not pay any attention to that. It is our purpose to sell a car when we go out to demonstrate our cars. I said to Mrs. Wittrock that I had demonstrated to a good many people and I didn't think it would happen to him—when she said he was too old to drive I replied, 'We will get along O. K.'. I meant her to think that I would watch to see that it would be safe, to best of my ability."

The record discloses that at no time did Mrs. Wittrock give her consent to Hansen driving the car unassisted and only remained in the car after she was given assurance that Hansen could drive with the assistance and watchfulness of Atzen. After the change of drivers was made, the car proceded for a short distance and on approaching a curve went across a ridge of gravel in the center of the highway to the left side of the road and then wobbled back toward the right side of the road, and continued to wobble and swerve for a short distance, until it entered a reverse curve, when it again crossed the graveled ridge and headed into a ditch on the side of the road, where it upset and the plaintiff was severely, grievously, and permanently injured.

After a motion for a directed verdict was made and overruled, the case was submitted to the jury and a verdict returned for the plaintiff against all of the defendants in the sum of $3,000, from which verdict and judgment entered thereon the defendants appeal.

No exceptions to the instructions were taken by the appellants, and the only error assigned is the overruling of the defendants' motion for a directed verdict. The instructions are not made a part of the abstract, and we must assume that the court properly submitted to the jury all of the issues and the controverted fact questions. No question is raised by the appellants as to the negligence of the defendants, and the question is not mentioned in the presentation of this appeal, and not considered in this opinion.

Defendants in their answer and in their brief allege four grounds of defense: (a) That the plaintiff was contributorily negligent. (b) That plaintiff and defendant, Hansen, were engaged in a joint enterprise. (c) That the plaintiff was a guest, and the defendants were not guilty of reckless operation of the automobile in question. And (d) that plaintiff assumed the risk of remaining and riding in the said automobile when the defendant Hansen drove the same. These grounds were also the basis of the motion for a directed verdict. However, the appellants only rely upon and argue the last two grounds above enumerated: (c) That plaintiff was a guest and there is no evidence of recklessness. (d) That plaintiff assumed the risk.

We will first consider the guest question.

In Knutson v. Lurie, 217 Iowa 192, 195, 251 N. W. 147, 150, this court had under consideration a state of facts very similar to the facts in the instant case. And in that case we said speaking through Justice Kindig:

"Undoubtedly it is the theory of the cases that when the relationship of master and servant exists between the passenger and the operator of the car, the transportation is for the mutual benefit of both. * * * 'The person transported is not a guest within the meaning of the statute if the transportation is for the mutual benefit of both parties, and in determining whether it was for their mutual benefit the relationship between the parties to which it was an incident may be considered. * * * The relationship must be definite and the benefit tangible, * * * but

it is not required that the relationship be such that the benefit accruing is the consideration for the transportation agreed upon by the parties.' One may be a passenger in an automobile without being a guest, a mere passenger by invitation, or a passenger for hire in the legal sense of the word. There are, in fact, a multitude of persons riding in cars daily who are not guests, passengers by mere invitation, or passengers for hire within the legal meaning of that term. A person riding in an automobile may be there because of the relationship of master and servant existing between him and the owner. In other instances, the rider in an automobile may be there (without the relationship of master and servant) for the definite and tangible benefit of the owner or operator; or such person may be in the automobile for the mutual, definite, and tangible benefit of the owner or operator on the one hand, and of himself on the other.''

In the Knutson case, supra, a woman was entertaining guests and arranged to take them home in her automobile. She had in her employ a maid who wanted to go down town to a shoe cobbler and get a pair of shoes, and Mrs. Lurie, her employer, volunteered to take her down town in the Lurie automobile. An accident happened and the maid was injured during the trip. Justice Kindig further continues in the opinion:

''The jury at least could find, under the record, that the trip was made for the entertainment of the Lurie guests, as well as to obtain the shoes for Orvilla [the maid]. These guests were passengers in the car on the trip. * * * The benefits of the trip were mutual, the jury could further find from the record.'' And this court held that a jury question was generated by the above recited facts.

In Bookhart v. Greenlease-Lied Motor Co., 215 Iowa 8, 244 N. W. 721, 82 A. L. R. 1359, we held that when a prospective purchaser of an automobile accepted an invitation of a salesman to ride in the car as a part of the demonstration that it was not a mere gratuity, but he was rendering value received for his transportation, and that a prospective purchaser of an automobile is not a guest within the meaning of the statute. In referring to the above case we held in the Knutson case, supra, that the result reached in the Bookhart case was correct but that the rule should be based upon mutual benefit to the parties concerned.

■■■ The appellant relies somewhat upon the case of Sproll v. Burkett Motor Co., 223 Iowa 902, 274 N. W. 63, but the facts in the two cases are entirely different. There the automobile was being operated, not by the salesman or owner or at their request, but by the prospective purchaser who was in no sense a representative or agent of the salesman or dealer, and we held under such facts that neither the agent nor dealer was liable. In the instant case plaintiff was riding in an automobile owned by the defendant Newcom which was in charge of the salesman, Atzen, and at the time of the accident was being driven by Hansen at the request of the salesman. Negligence is alleged as against Hansen for attempting to operate the car at his advanced age and when he was unfamiliar and inexperienced with its operation, and as against Atzen for inducing Hansen to attempt to operate the car and in not turning off the switch, applying the emergency brake, or steering or attempting to steer the car and right it in its course when he discovered that it was out of control of Hansen. Atzen undertook to carry Hansen and his sister over the road for the mutual benefit of all—for his benefit in attempting to sell the car, for Hansen's benefit in order to observe the operation of the car, and for the plaintiff's benefit in transporting her to the place of her employment, and to aid in selling the car to Hansen. Under these circumstances we are constrained to hold that the plaintiff was not a guest, within the meaning of the so-called guest statute, Code 1935, §5026-b1, at the time of the accident.

■■■ As to the other assignment of error based upon the conclusion that the plaintiff assumed the risk of continuing to ride in the automobile after it was being driven by her brother she knowing of his age, his inexperience with the new car, and the danger incident to the operation of the car by him, it is true plaintiff protested at the time the change of driver was made and gave her reasons why her brother should not be permitted to drive the car, but she was assured by the defendant, Atzen, that Hansen could drive the car and that he (Atzen) would help him and would see that no accident occurred. The plaintiff could not get out of the car after her brother started to drive it because it was moving and because she could not get out unless one of the persons in the front seat would first get out and tip the seat forward releasing her from her pent-up situation. She at no time conducted herself so as to show that

she was willing and consented to remain in the car with Hansen as the driver, at least until after she had received the assurances of Atzen that he would watch and assist in driving and see that nothing occurred. Before the car was stopped by Atzen to change drivers, the plaintiff protested that Hansen was too old and inexperienced to drive the car, and Atzen says that he paid no attention to that protest; that it was his purpose to sell the car that he had out on demonstration. There is no logical reason discernible from the record that the plaintiff at any time showed a willingness to take the chances of the defendant's action and to run the risk. No case is cited directly bearing upon a fact situation such as this record discloses. In master and servant cases assurances of safety ordinarily are held sufficient to carry the question of assumption of risk to a jury especially when reasonable minds may differ as to whether the peril is imminent, and if the rule in such cases is applied here, it would not create a situation where a court could say as a matter of law that the plaintiff, under this record, assumed the risk. At most it could only create a jury question and we are unable to say from this record whether the question was submitted to the jury for its determination or not as the instructions are not made a part of the record.

We held in White v. McVicker, 216 Iowa 90, 94, 246 N. W. 385, 387, that the doctrine of assumption of risk and contributory negligence may overlap each other under the same state of facts and held that we have consistently distinguished these two doctrines and held that they were distinct and separate. However, the cases cited to support such pronouncement are all master and servant cases. And the same thing is true with the cases cited by appellant. In the McVicker case we quoted with approval from a text as follows:

" 'As a rule, the application of the maxim [*volenti non fit injuria*] is justifiable if the plaintiff received his injuries under circumstances leading necessarily to the inference that he encountered the risk of them freely and voluntarily and with full knowledge of the nature and extent of the risk: in other words, if the real cause of the plaintiff running the risk and receiving the injuries was his own rash act.' "

We further said in the McVicker case speaking through Justice Albert:

"The sum total of the application of this doctrine simply stated is that, where one is placed in the position where he has his choice of doing or not doing a given act, this doctrine applies. We take it to be the rule, therefore, under this doctrine, that, where one voluntarily becomes a guest in an automobile, with a knowledge that the driver is incompetent or inexperienced, or after he has assumed his position in the car, it comes to his knowledge that the driver is intoxicated, or is reckless in his driving, and with such knowledge on his part he aids or encourages the driver, or acquiesces or joins or cooperates in such recklessness, he takes the chance of an accident, and, in case an accident occurs, arising from such known incompetency, inexperience, or intoxication of the driver, or other such known recklessness, then plaintiff cannot recover."

In the instant case plaintiff did not voluntarily remain as a passenger in the automobile after her brother started to drive it. She protested both before and after he attempted to drive and was lulled into some degree of a sense of security by the unqualified assurances of Atzen.

In the case of Miller v. Stevens, 63 S. D. 10, 256 N. W. 152, cited by appellants and in which appellants conclude the court held that a guest in an automobile has assumed the risk, the court in fact held that there was no actionable negligence and the case was dismissed for that reason.

In Krueger v. Krueger, 197 Wis. 588, 222 N. W. 784, also cited by appellants, the facts showed that employees of the Krueger family had been driving in an automobile all night; they were all sleepy, and in fact all were asleep except the driver, a son, and he fell asleep and permitted the car to run off the road and injure one of his family, and under such state of facts the Wisconsin court held that as a matter of law the plaintiff assumed the risk incident to the entire situation.

In Kelly v. Gagnon, 121 Neb. 113, 236 N. W. 160, 164, assumption of risk was not in the case, and the Supreme Court of Nebraska held the trial court erred in not directing a verdict for the defendant on the grounds that the evidence was "insufficient to constitute a cause of action against one, either or all of the defendants, and in favor of the plaintiff, and for the further reason that the evidence is insufficient to show that Helen Gagnon, the driver of the automobile, was negligent towards

the plaintiff in any degree, and for the further reason that the evidence is conclusive that the defendant Helen Gagnon did everything possible that she could have under the circumstances to avoid an accident after the spike entered the tire of her automobile." This quotation indicates without any reference as to the question of assumption of risk that the case was determined for the reason that no actionable negligence was shown. The same thing is true in another case cited by the appellants. Eisenhut v. Eisenhut, 212 Wis. 467, 248 N. W. 440, 250 N. W. 441, 91 A. L. R. 549, where the Supreme Court of Wisconsin held no actionable negligence was proven and directed a dismissal of the case.

The appellants also cite a text from 18 R. C. L., at page 700, as follows:

"It is said that where the peril is shown to have been so obvious, immediate and constant that a reasonably prudent person would not have incurred it, no recovery will be allowed." This text has reference to a master and servant situation and the text goes on to say: "He is not required to balance the degree of danger and decide whether it is safe for him to act, but is relieved in a measure of the usual obligation of exercising vigilance to detect and avoid the danger. Especially when the act is one that could be made safe by the exercise of special care on the part of the employer, the employee may assume that such care will be taken. * * * If the injured employee relies upon a command or *assurance* given by a representative of the employer, he must be prepared to show that the representative was duly authorized to act for the employer, a matter that more often than not is within the jury's province for determination. The general principle above expressed applies in case the employee performs the service pursuant to *assurances* of the absence of danger as well as where the inducement takes the form of a command or order. If, suspecting danger, he demurs to the performance of desired acts, and the employer to overcome his hesitation assures him that no danger exists, he will be entitled as a rule to recover in case he sustains an injury."

The rule is stated in 39 C. J. 1191, Sec. 1368, as follows:

"Whether the servant, knowing of the danger, was justified in undertaking the work in reliance on the master's assur-

ance of safety is a question for the jury, where reasonable minds may draw different conclusions from the evidence.''

Supporting this rule the case of Braddich v. Phillips Coal Co., 159 Iowa 402, 411, 138 N. W. 406, 410, is cited. We quote from the cited case:

''What has already been said on the question of the plaintiff's negligence is, in a great measure, applicable to the claim that he assumed the risk * * * While the plaintiff did know that the roof sounded 'loose and drummy,' there was evidence, to which we have already called attention, that the plaintiff was not fully aware of, and did not appreciate, the danger after the pit boss had assured him that he knew from his greater experience that the place was safe * * * We think there was no error in submitting this question to the jury.''

The above stated rule was again announced by this court in Williams v. Coal Co., 165 Iowa 588, 146 N. W. 735, and the Braddich case, supra, was approved.

The real point upon which the decision of this proposition rests is whether the danger to the plaintiff by Hansen driving the car, with her understanding that he would be assisted by Atzen, was so obvious and imminent to the ordinary mind that it would be held unreasonable for the plaintiff to rely upon the assurances of Atzen. If reasonable minds could reach the conclusion only that it would be unreasonable for plaintiff to rely upon the assurances, then she should be held not entitled to recover in this action. However, if reasonable minds could differ, then it presented a jury question, and as we have suggested, it is fair to presume or assume that the court submitted the question to the jury under proper instructions. In fact, it appears from the appellants' abstract of the record that the court submitted the case to the jury on all the theories of defense, except that of joint adventure, and this would include the submission of the question as to assumption of risk.

In Dimetre v. Sewer Pipe Co., 127 Minn. 132, 148 N. W. 1078, 1080, in discussing this question the court said:

''Whether, in view of all the circumstances, the danger was so obvious and imminent and so apparent to the ordinary mind that Naum could not reasonably rely upon the assurances of safety given by the foreman was a question for determination

by the jury and not by the court. Such questions can be determined by the court only when the court can say that all reasonable minds would concur in the conclusion reached."

It follows from the foregoing discussion that we find no error in the record and an affirmance necessarily follows. The motion to dismiss the appeal filed by the appellee and submitted with the case is overruled.—Affirmed.

STIGER, C. J., and MITCHELL and KINTZINGER, JJ., concur.

HAMILTON and RICHARDS, JJ., concur in result.