K. R. MITCHELL, Appellee, v. J. L. HEATON, Appellant.

No. 45758.

DECEMBER 9, 1941.

Miller, Huebner & Miller and R. B. Hawkins, for appellant.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellee.

HALE, J.—The only specification of negligence in plaintiff's petition was that the right rear wheel of defendant's automobile was made so that the wheel fastened thereon with six lug bolts and nuts, and at the time of the accident the defendant was driving the same with only four nuts thereon, and one was loose

and of no use in holding on the wheel. The wheel came off and the automobile was thrown into a cement culvert.

Defendant was a dealer in agricultural implements and had for sale a repossessed tractor which he was trying to sell to plaintiff's brother. Defendant brought the plaintiff and his brother to Osceola to examine the tractor for the purpose of attempting to sell the same to plaintiff's brother. The petition alleged that plaintiff was in the automobile at the time for the benefit of defendant and was not a guest. In his answer defendant asserted that the plaintiff voluntarily assumed all risk incident to the condition of the right rear wheel, and denied that plaintiff was riding in the car in any status other than as a guest, and denied that he (the defendant) was guilty of any reckless operation of the automobile.

Plaintiff is a farmer, living near Garden Grove, and he owned a tractor of the kind which his brother was considering buying. His father is also a farmer. The brother Clement, younger than the plaintiff, farmed with his father. Defendant had informed Clement of the repossessed tractor and had arranged with him to drive to Osceola on the day of the accident. Clement had asked his brother to accompany him to advise as to the merits of defendant's tractor. There was testimony to the effect that Clement had told defendant that he would expect his father and brother Kenneth to go with him, and that he would not go unless his brother Kenneth could go, because Kenneth owned a tractor identical to the one at Osceola and he wanted his judgment, that he would not go unless Kenneth could go with him.

On the day of the injury, July 30, 1938, defendant drove to the farm where Clement lived and took in Clement and his father, W. T. Mitchell. He then drove to Kenneth Mitchell's place, about 8 o'clock, and took Kenneth into the car. He then drove west to highway No. 69, and thence north to about the Decatur-Clarke county line, at about which point the right rear tire was observed to be down. At a point about 50 yards north of the Landis filling station the wheel was removed and Clement and the defendant took the wheel to the filling station, where the tire was repaired, and they then returned to defendant's automobile. Clement replaced the wheel upon the lug bolts

attached to the hub. Kenneth started to replace the nuts and then discovered there were only four nuts instead of six. The four nuts were attached to the bolts, but one nut did not hold very well. Plaintiff called the attention of the defendant to this fact, stating, "I don't like the looks of that," and asked how long it had been driven that way; and further stated, "You had better put these on because you know how they go." Defendant then stated that he had been driving that way for approximately two months, and, according to the testimony, stated he would drive "careful and slow" and have new bolts put on at Osceola. The testimony of the plaintiff is that he asked whether or not the car was safe to drive in that condition, and received the information that it had been driven that way over cornfields and rough roads for over two months, and that the defendant would drive carefully, and that it would be perfectly safe. Plaintiff then admonished defendant to drive "slow and careful" because he did not want to get hurt, and defendant assured him that he would, and that it was all right. The testimony of Clement Mitchell is also that defendant stated that it was safe to drive from there to Osceola. This statement defendant does not deny, but states that he does not remember. His testimony is that, "The boys asked me to drive carefully, but I don't remember being asked the question whether it was safe to go on. I told them I thought it would be safe to drive on to Osceola. It wasn't safe for all driving, but to get down to Osceola on the straight road I felt we could do that all right with it."

The parties returned to the car and defendant proceeded to drive at the rate of about 25 miles an hour, which speed was increased as they approached a bridge where there was a descent in the road. South of the bridge, 100 to 200 feet, the right rear wheel came off and the right rear end of the car dropped to the pavement. The car turned to the west, crossed the pavement, and then turned back to the east, continuing north at a lower rate of speed. It collided with the south end of the abutment of the bridge, and stopped. The right rear door came open and plaintiff was thrown into the creek. Other parties in the car were also injured.

The defenses to plaintiff's claim for damages were that

the plaintiff assumed the risk of being injured by remaining in the automobile after it left the filling station, and that plaintiff was a gratuitous passenger in the automobile at the time he was injured and that defendant owed him no duty except not to be reckless in the operation of the automobile and that he was not reckless.

At the conclusion of all the evidence defendant filed a motion for directed verdict on the grounds of assumption of risk and under the guest statute (Code, 1935, section 5026-b1; Code, 1939, section 5037.10), which motion was overruled, and on submission to the jury a verdict was returned for the plaintiff. Defendant's motion for a new trial on the same grounds was overruled, and defendant has appealed.

I. The first assignment of defendant is that the plaintiff, knowing the condition of the right rear wheel and voluntarily exposing himself to the danger of riding in the car in such condition, is precluded from recovering for the injury which resulted from such exposure. This objection was made by ground 2 of the motion for directed verdict, ground 2 of the motion to withdraw issues, and grounds 1 to 3 of the motion for new trial.

The only specification of negligence relied upon by plaintiff in his petition is as to the right rear wheel of the car. We have called attention to the conversation just prior to the resumption of the journey after the mending of the tire, and defendant argues that one who knows of a danger arising from the act or omission of another, and understands the risk therefrom and voluntarily exposes himself to it, is precluded from recovery for injury resulting therefrom; or, if a person, with knowledge and appreciation of the defective condition of a car, voluntarily assents to ride therein, he would be precluded from recovery. There is no question that the plaintiff in this case had knowledge of the condition of the right rear wheel and that he voluntarily rode in the car after he had knowledge of such condition. Defendant relies upon and cites various cases. There is not much dispute that, under such a situation, with nothing further shown, there would be an assumption of risk.

Defendant cites the case of White v. McVicker, 216 Iowa 90, 246 N. W. 385, in which it was pleaded as a defense that the

plaintiff, a guest, in a case involving recklessness, knew that the driver was incompetent, inexperienced, reckless, or intoxicated, voluntarily became a guest, and, with knowledge of the nature and extent of the danger, aided, encouraged, cooperated, or acquiesced in the operation of the car in a reckless manner. Motion to strike this defense was sustained, and on appeal it was held not prejudicial, since the evidence did not sustain it. There was no question here of any conduct tending to lull into security, or of representations on the part of the defendant.

Also is cited Helming v. Peoples National Bank, 206 Iowa 1213, 220 N. W. 45; and the same may be said in this case, where it was the duty of the plaintiff to have such repairs made as were necessary. There was no suggestion of any representations or conduct on the part of the defendant such as would enable a person to avoid the effects of his own assumption of risk.

Douglas v. Scandia Coal Co., 161 Iowa 180, 141 N. W. 960, was an ordinary case of assumption of risk, where the plaintiff was fully aware of the dangers attending the driving of the animal assigned to him. The principal complaint in this case was failure of the defendant to warn the plaintiff, who was fully aware of the nature of the mule he had to drive.

Other cases cited by defendant only refer to the general rule as to assumption of risk as applying to guests in automobiles.

We have said that there is no dispute that the plaintiff saw the condition of the wheel, but plaintiff denies that he did appreciate the danger, and states that the defendant promised to drive carefully and failed to do so. There is evidence showing that after the replacement of the wheel the defendant stated that it was safe and promised to drive carefully. There is also testimony that plaintiff knew nothing about that make of car, and that he believed and relied on defendant's statements that it was safe and that he would drive carefully. There is further evidence that the defendant did drive with care until near the point of the accident, and that he increased the speed at that point and gave the car a turn to the left. In answer to defendant's claim that the danger was so obvious and plain that plaintiff was not justified in relying on defendant's assur-

ances that the wheel was safe and that he would drive carefully, plaintiff cites Wittrock v. Newcom, 224 Iowa 925, 931, 277 N. W. 286, 289, which holds that, under like circumstances, when, against the protest of a passenger, she is assured of safety by the salesman, there is not as a matter of law an assumption of risk, since reasonable minds could differ and it was for the jury to determine if it was unreasonable for her to rely on the salesman's assurances of safety. The language of the court in the Wittrock case is that:

"In master and servant cases assurances of safety ordinarily are held sufficient to carry the question of assumption of risk to a jury especially when reasonable minds may differ as to whether the peril is imminent, and if the rule in such cases is applied here, it would not create a situation where a court could say as a matter of law that the plaintiff, under this record, assumed the risk. At most it could only create a jury question * * *."

The opinion cites White v. McVicker, supra, and various other cases, holding to the general rule that, where reasonable minds might differ, the question is one for the jury. See also Edwards v. Kirk, 227 Iowa 684, 288 N. W. 875.

Defendant argues that the Wittrock case does not apply, but we fail to see any distinction in the principles governing the rule in that and the present case. It is apparent that the plaintiff in the Wittrock case was lulled into security by the assurance of the salesman that no harm would occur. It is there held that reasonable minds might differ upon the question as to whether the danger to the plaintiff by Hansen's driving the car, with her understanding that he would be assisted by Atzen (the salesman), was so obvious to her that reasonable minds could reach the conclusion only that it would be unreasonable for her to rely upon the assurances of Atzen.

"If reasonable minds could reach the conclusion only that it would be unreasonable for plaintiff to rely upon the assurances, then she should be held not entitled to recover in this action. However, if reasonable minds could differ, then it presented a jury question, and as we have suggested, it is fair to

presume or assume that the court submitted the question to the jury under proper instructions." Wittrock v. Newcom, 224 Iowa 934, 277 N. W. 291.

So in this case, no objection is made that this question was not properly submitted, and no objection is made to the instructions as a whole. We think, under the principles enunciated in the Wittrock case, that the court in this case was correct in holding it to be a jury question and the submission thereof was not erroneous.

■ II. As to his second assignment of error that plaintiff was riding in defendant's car as a guest, and, there being no proof claimed or offered as to recklessness, there can be no recovery, the defendant relies upon our decision in the case of Sproll v. Burkett Motor Co., 223 Iowa 902, 274 N. W. 63, decided in 1937. We are of the opinion that the facts in this case do not bring it within the rule laid down in that case. An examination of the facts in the instant case as compared with those in the Sproll case will indicate the difference. The plaintiff in the Sproll case was a friend of one Montgomery who was negotiating for the purchase of a used automobile. The defendant company gave him a car to test, and Sproll, who was experienced, was asked by Montgomery to go along to advise as to the prospective purchase. Montgomery drove the car into the country and brought it back to the garage of the defendant. He informed the company that the car drove all right, but said that before making the deal he would like to get his wife and take her out in the car and see what she thought of it, and was given permission so to do. The record does not show that Sproll was requested by the defendant company to go on the second trip, or that it even knew that he was going. There is no showing that Montgomery was authorized in any way to do more than to show the car to his wife. In no sense was the taking of Sproll in the car beneficial to the defendant company. There was no showing of recklessness and, under the holding, Sproll was riding as a guest and was not a passenger for hire. The court in one place, page 907 of 223 Iowa, page 66 of 274 N. W., says:

"Although the petition in this case alleges that the plaintiff was requested by the defendant motor company to accom-

pany Montgomery for the purpose of advising him as to the quality and efficiency of the car, the evidence does not sustain this allegation.''

In the Sproll case it must be remembered that there were two trips. On the first, where Montgomery and Sproll went out together, Sproll was in an advisory capacity; but on the second trip, all that remained was for Montgomery to ascertain whether his wife was satisfied with the car, and Sproll was on that trip merely a guest.

The distinction is quite apparent if the evidence in this case is compared with that in the Sproll case. Here the defendant was interested in the sale to the plaintiff's brother, and had been told that there could be no negotiations for the sale, nor any trade made, unless the plaintiff was along; so that the trip in which plaintiff was injured was of necessity for the benefit not only of the plaintiff's brother but of the defendant himself. Plaintiff's presence in the car was, therefore, of benefit to both parties to the negotiations.

We think as to the facts the case comes more nearly within the rule laid down in Bookhart v. Greenlease-Lied Motor Co., 215 Iowa 8; 244 N. W. 721, 82 A. L. R. 1359. This case was later reviewed in Knutson v. Lurie, 217 Iowa 192, 199, 251 N. W. 147, 151, which, while not agreeing with the statement in the former case that the mutual benefit amounted to a consideration for the transportation, yet held that the ruling therein was correct, on the basis, however, of mutual benefit to the parties concerned. The case then recites:

''Then, as a natural consequence of the rules above announced, if the facts are in dispute concerning the purpose of the transportation or the conditions under which it is made, a jury question, as is general in law actions, will be presented.''

There is no question here made by either party as to any recklessness in the conduct of the defendant. See cases cited in Chaplowe v. Powsner, 119 Conn. 188, 175 A. 470, 95 A. L. R. 1177, and annotation, 1180 et seq. And see Wittrock v. Newcom, supra, decided in 1938. The Sproll case is distinguished in the Wittrock case, where the facts are much more analogous to those in the present case. In that case, at page 930 of 224

Iowa, page 289 of 277 N. W., Atzen (the salesman) undertook to carry Hansen (the prospective purchaser) and his sister "over the road for the mutual benefit of all—for his benefit in attempting to sell the car, for Hansen's benefit in order to observe the operation of the car, and for the plaintiff's benefit in transporting her to the place of her employment, and to aid in selling the car to Hansen. Under these circumstances we are constrained to hold that the plaintiff was not a guest, within the meaning of the so-called guest statute, Code 1935, §5026-b1, at the time of the accident." See also Doherty v. Edwards, 227 Iowa 1264, 1268, 290 N. W. 672, 674, decided in 1940, and cases therein cited. In this latter case, the opinion by Justice Oliver refers to Wittrock v. Newcom, supra, and, in reference to that case, states:

"* * * we held that a lady passenger in an automobile which was being demonstrated to a customer was not a guest where she was requested to ride because she was related to and employed by the prospective customer and the salesman thought her presence would further his chances of making a sale. This expectation on the part of the salesman was recognized as sufficient to constitute the definite and tangible benefit to him referred to in Knutson v. Lurie, supra."

For the reasons given, we hold that under the evidence the court could not hold for defendant on either the question of assumption of risk or under the provisions of the guest statute (Code, 1935, section 5026-b1), and the rulings and judgment must be affirmed.—Affirmed.

MITCHELL, STIGER, BLISS, OLIVER, GARFIELD, and WENNERSTRUM, JJ., concur.

MILLER, C. J., takes no part.